

# IN THE
# TENTH COURT OF APPEALS

_____

### No. 10-21-00284-CR

**TROY EUGENE WELCH,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

_____

### From the 278th District Court
### Leon County, Texas
### Trial Court No. 19-0131CR

_____

## DISSENTING OPINION

_____

In a number of proceedings, the Court has used an abatement procedure purporting to allow the trial court to reconsider its judgment regarding the assessment of mandatory court costs. This is one of those proceedings. I dissented to the use of the procedure at the time it was utilized.

The abatement procedure resulted in the trial court rendering a judgment nunc pro tunc attempting to correct not only the amount of mandatory court costs but also assessing other charges in the judgment nunc pro tunc. In the first of those appeals to make it to the stage of an opinion and judgment, I wrote a lengthy dissent. *See Carnley v.*

*State*, No. 10-21-00104-CR, 2023 Tex. App. Lexis 8896, *4-46 (Tex. App.—Waco Nov. 30, 2023) (publish) (Gray, C.J., dissenting). The 37-page dissenting opinion sets out the facts unique to the proceeding as well as the law and analysis applicable to all of the proceedings in which the abatement procedure was, in my opinion, erroneously utilized.

I could set out herein the unique features of this case and the analysis which would result in another lengthy dissenting opinion because it is based on the same legal analysis. To do so would result in precision in tailoring the analysis to the facts but would also cause substantial delay for marginal analytical benefit. Accordingly, I have decided the best balance of making it easy on the reader, but yet providing a relatively complete analysis, is to attach my dissenting opinion from *Carnley* as an appendix to this dissenting opinion and incorporate that analysis herein by reference.

Additionally, to focus the reader on the specific portions of the *Carnley* dissenting opinion, I will endeavor to provide a greatly abbreviated reference to the relevant facts and legal concepts argued in the *Carnley* dissenting opinion that are also relevant to this dissenting opinion.

**Facts Unique to this Proceeding**

The first judgment assessed no fine, restitution, or reimbursement fees, and only $364.00 in "court costs." The judgment nunc pro tunc adjudicating guilt, signed after the notice of appeal and abatement order from this Court, assessed "court costs" of $848.00 and reimbursement fees of $25.00.

As indicated by the analysis in *Carnley,* we should be reviewing the court costs in the first judgment because we have no authority or jurisdiction to be reviewing the judgment nunc pro tunc. Specifically, we had no authority to abate the appeal, and we

have no certificate of right of appeal or notice of appeal from the judgment nunc pro tunc. As a result of Welch's "successful" appeal, he now owes $485.00 more than when he started this appellate journey.

One additional observation, not noted in but equally applicable to *Carnley*, is the difficulty in the analysis caused by the manner in which the Certified Bill of Cost is modified in such a cavalier manner. There are no dates, or other reference information, for the charges included in the Bill of Costs which would facilitate the analysis we are attempting to perform. This is particularly troublesome on charges like attorney fees which may be incurred at different times for different trial court or appellate proceedings, some of which could possibly be classified as recoverable court costs when others are clearly not; but without the dates and reference information, it is impossible to know. Additionally, the wild swings in the total amount of charges reflected on the various certified bills of costs concern me when it is then so quickly modified without explanation, notice, or the opportunity for the defendant/appellant to timely challenge the changes.

Based on the foregoing, including the *ratio decidendi* of *Carnley*, I respectfully dissent to the Court's analysis in its opinion and its judgment.


TOM GRAY
Chief Justice

Dissent delivered and filed December 14, 2023



IN THE
TENTH COURT OF APPEALS

No. 10-21-00104-CR

CARL CLIFTON CARNLEY,

Appellant

v.

THE STATE OF TEXAS,

Appellee

From the 369th District Court
Leon County, Texas
Trial Court No. 19-0011CR

## DISSENTING OPINION

This case presents a train wreck of procedure and law. It is one of those times when I wish that what I foretold would not have come to pass. But here it is.

Let me present an indisputable fact to get your attention and then see if together we can find a way out of this morass. Mr. Carnley was assessed $124.00 of court costs. After a *successful* appeal, he now owes $879.00.

Specifically, the judgment of the trial court which was the subject of this appeal

when it was filed assessed "Unpaid Court Costs" in the amount of $124.00. After

sustaining appellant's complaints regarding the erroneous assessment of $24.00 of court

costs, the Court modifies the trial court's current judgment and reduces the "Unpaid

Court Cost" to $824.00 ($848.00 - $24.00 = $824) plus $55.00 for reimbursement fees for a

total of $879.00. This is the result of a successful appeal? I do not believe Mr. Carnley

would agree with that characterization.

PROCEDURAL BACKGROUND

How did we get here? Maybe the better question is, where in the legal world are

we?

**Deferred Adjudication Order**

Carnley was first placed on Community Supervision – Deferred Adjudication.

The Order of Deferred Adjudication, which is actually a final judgment in every sense of

the term, was signed on August 29, 2019. It was the result of a plea bargain. The terms

of the plea bargain are summarized on the face of the order as follows:

> Five (5) years deferred adjudication, $308.00 court cost, $2,500.00 fine,
> $50.00 Crimestoppers, $50.00 Crime Victims Fund, $180.00 Restitution Drug
> Offender Education Court, Intensive Supervision Program and 275
> Community Service Hours. A $25.00 fee will be assessed if court cost, fine
> or restitution are not paid within 30 days of this Judgment.

Note the total of these amounts is $3,088.00. The order also had a checked box for the

following statement: "Terms of plea bargain are attached and incorporated herein by

reference." Further down on the face of the order were the following captions and

amounts:

| | |
|---|---|
| Fine: | $2,500.00 |
| Attorney Fees: | $_____ |
| Court Costs: | $308.00 |
| Restitution | $180.00 |

Note that the total of these amounts is $2,988.00.

Attached to the Order of Deferred Adjudication are several other documents including a referenced Order Imposing Conditions of Community Supervision. Included in the Order Imposing Conditions of Community Supervision are two provisions related to payments: first, community supervision fees were to be paid at the rate of $60.00 per month for a total of $3,600.00 ($60.00/month for 60 months); second, "Other Financial Obligations" in the amount of $61.86 per month were to be paid over 60 months for a total of $3,588.00, plus a $2.00 administrative fee for each payment. *See* TEX. CODE CRIM. PROC. art. 102.072 (administrative fee). The $3,588.00 total included $500 of attorney's fees not otherwise included in the order, but instead, included only in the monthly payments agreed to be paid during the period of community supervision.

The Bill of Costs dated August 28, 2019, identifying specific costs, including a $25.00 time payment fee, totals $308.00. In addition to that total, the clerk notes in the Bill that there will be an additional collection fee of 25% of any fine, court cost, and restitution that is more than 60 days past due. *See* TEX. CODE CRIM. PROC. art 103.0031, repealed by Acts 2019, 86th Leg., ch. 606 (S.B. 891), § 15.01(2), effective September 1, 2019. Moreover, the clerk also states in the Bill that an "additional time payment fee of $25 will be assessed

if any part of the fine, court costs, or restitution is paid on or after the 31st day after the date the judgment" is entered. In support of this statement, the clerk cites to Texas Government Code Section 133.103 which was renumbered, effective January 1, 2020, to Texas Code of Criminal Procedure article 102.030.

There was no appeal. Later, the State filed a motion to adjudicate and an amended motion to adjudicate. The amended motion alleged Carnley violated a number of the conditions of community supervision and was delinquent in the payment of costs and fees as follows:

|  | Original | Payment | Delinquent |
|---|---|---|---|
| Probation Fees | 3,600.00 | 0.00 | 780.00 |
| Court Cost | 308.00 | 0.00 | 308.00 |
| Attorney's Fees | 500.00 | 0.00 | 316.18 |
| Restitution | 180.00 | 30.00 | 150.00 |

There is no need, at this juncture, to try to reconstruct or reconcile the payments and credits related to Carnley's account. I simply note that from what we have in the record, it was clear that Carnley paid some funds to the State but failed to make all the payments necessary to comply with his conditions of community supervision.

The trial court granted the State's amended motion and adjudicated Carnley guilty on April 29, 2021. I will call this the trial court's first judgment since it was the first judgment adjudicating Carnley's guilt and sentencing him to prison.

**First Judgment**

The trial court's Judgment Adjudicating Guilt, the first judgment, the one that was

actually appealed, adjudicated Carnley guilty for possession of a controlled substance, penalty group 1, less than 1 gram, on December 31, 2018. Carnley's sentence of 24 months confinement in a State Jail facility was pronounced on April 29, 2021. That judgment had the following captions completed as indicated:

Unpaid Fines: $0.00
Court Appointed Attorney Fees: $0.00
Restitution Payable to: [ * ]
Unpaid Court Costs: $124.00
Reimbursement Fees: $0.00

*[AGENT/AGENCY (See special finding or order of restitution which is incorporated herein by reference.)]

The judgment summarized the terms of the previously imposed deferred adjudication order including the notation that a fine in the amount of $2,500 had been assessed. However, the judgment did not assess any fine. The trial court certified Carnley's right to appeal. He did. Here we are.

Included in the clerk's record is an order to withdraw funds. Although it is labeled as Attachment A, it is not referenced in the trial court's first judgment. In the order, Carnley is found to be unable to pay the "court costs, fees and/or fines and/or restitution" which "have been incurred in the amount of $124.00." That amount is ordered to be "made out of" Carnley's inmate account. The order is not signed but purports to be "entered and incorporated into the Judgment and Sentence of this Court and pursuant to Government Code, Section 501.014, on **April 29, 2021**." (CR 33)

A certified Bill of Costs, dated May 19, 2021, also appears in the clerk's record. The

amount certified as charges is $3,989.00, all of which is also included in the balance column. This amount includes the following:

| FEE DESCRIPTION | CHARGES | BALANCE |
|---|---|---|
| Local Consolidated Court Costs | $105.00 | $105.00 |
| State Consolidated Court Costs | $185.00 | $185.00 |
| REIMBURSEMENT FEES | CHARGES | BALANCE |
| Time Payment Fee | $25.00 | $25.00 |
| ASSESSED CHARGES | CHARGES | BALANCE |
| Fine | $2,500.00 | $2,500.00 |
| Crime Stoppers 10-200-412 | $50.00 | $50.00 |
| Compensation to Victims 10-200-276 | $50.00 | $50.00 |
| Attorney Fee Voucher | $950.00 | $950.00 |
| Issue Capias | $16.00 | $16.00 |
| Sheriffs Service Fee 10-300-308 | $100.00 | $100.00 |
| Issue Subpoena | $8.00 | $8.00 |
| GRAND TOTAL | $3,989.00 | $3,989.00 |

As is apparent, there is no credit for any prior payments notwithstanding the record reflects, as mentioned above, that some amounts had been paid.

**THE APPEAL**

On June 28, 2021, Carnley's appointed counsel filed an *Allison* brief. *Allison v. State*, 609 S.W.3d 624, 628 (Tex. App.—Waco 2020, order) (per curiam) *(Anders* brief in support of a motion to withdraw which also asserts merits-based non-reversible error). Carnley filed a pro se response, and the State filed a letter waiving its right to respond to the merits-based argument. By April 7, 2022, the case was ready to decide.

**The Abatement Order**

Rather than decide the appeal, the Court abated the appeal on October 19, 2022,

with one justice dissenting, me.   In reliance on Rule 44.4 of the Texas Rules of Appellate Procedure, the Court stated,  "We abate this appeal to the trial court to review, and if necessary, correct only the assessed mandatory court costs." *Carnley v. State*, No. 10-21-00104-CR, *4 (Tex. App.—Waco Oct. 19, 2022, order) (not designated for publication).  A hearing was to occur within 30 days of the abatement order.  The Court also wrote, "We further note that some of the issues involving court costs may be remedied by the filing of a judgment *nunc pro tunc* in the trial court." *Id*. n. 1.  The Court went on to note that a nunc pro tunc judgment was appropriate to make a correction when the court's record does not mirror the judgment actually rendered and may be used to correct clerical errors, but not judicial omissions, in a trial court's judgment. *Id*.  Tellingly, the Court's abatement order failed to identify any trial court error or omission or even a perceived discrepancy between the judgment the trial court pronounced and the judgment appearing in the appellate record that the trial court signed, which is necessary for the proper applications of Rule 44.4.  As the author of the dissent, I pointed out these and other issues to which we would return.

Essential to understanding the procedural development of this case is that the Court was not abating the appeal to fix an identified problem.  Rather, the Court was attempting to give jurisdiction to the trial court to "review" Carnley's complaints in his brief and fix them if the trial court could.  In this way, the Court could maybe avoid the sometimes tedious task of review and error correction, which is our duty.  But would

other problems lurk beneath this seemingly simple procedure?  I thought there would be.

**Judgment Nunc Pro Tunc**

After having to request an extension of time, the trial court dutifully held the ordered hearing; sort of.  The State filed a motion on November 29, 2022 which stated:

> **The form JUDGEMENT ADJUDICATING GUILT reflects that the Court Costs are $124.00 and Reimbursement Fees as $0.00.**
>
> WHEREFORE, the State of Texas prays that the JUDGMENT in this cause be reformed to show the correct court costs and reimbursement fees.

There appears to have been no hearing other than possibly the trial court's in-chambers consideration of the foregoing described motion.  There is no reporter's record to indicate whether there was a gathering of persons in the courtroom interested in the issues being considered.  There are no exhibits, affidavits, or any other indicia of an evidentiary hearing.  There are no briefs or memoranda to suggest the legal arguments made or responses thereto that may have occurred on remand.  There is no notice of a hearing. There is, however, an order and also a separate judgment—a new judgment—a nunc pro tunc judgment.

The "Order Entering Nunc Pro Tunc on Judgment" was signed and filed on November 29, 2022, the same date the motion was filed, and in its entirety states:

> This day came on to be heard the State's Motion to enter Judgment Nunc Pro Tunc in the above styled and numbered cause and the Court having heard the Motion and being satisfied that the statements therein are true, is of the opinion that said motion should be granted.  It is therefore CONSIDERED, ORDERED and ADJUDGED by the Court that the following judgment should be reformed to reflect:

**The form JUDGEMENT ADJUDICATING GUILT should reflect that the Court Costs are $848.00 and the Reimbursement Fees as $55.00.**

and a copy of this ORDER be attached to the original Judgment and become a part thereof.

The "Judgment Nunc Pro Tunc Adjudicating Guilt" purports to have been "entered" April 29, 2021 but was filed by the district clerk on December 1, 2022. It does not indicate on what date it was signed, and it provides on its face the following captions and amounts:

Unpaid Fines: $0.00
Court Appointed Attorney Fees: $0.00
Restitution Payable to: [ * ]
Unpaid Court Cost: $848.00
Reimbursement Fees: $55.00

*[AGENT/AGENCY (See special finding on order of restitution which is incorporated herein by this reference.)]

The amounts now appearing in the judgment nunc pro tunc can be reconciled to a Bill of Costs dated November 29, 2022. The Bill of Costs reflects the following captions, descriptions, and amounts:

| FEE DESCRIPTION | CHARGES | BALANCE |
|---|---|---|
| Local Consolidated Court Costs | $74.00 | $74.00 |
| State Consolidated Court Costs | $133.00 | $133.00 |
| REIMBURSEMENT FEES | CHARGES | BALANCE |
| Peace Officer: Execute or Process AW, Capias | $50.00 | $50.00 |
| ASSESSED CHARGES | CHARGES | BALANCE |
| Juror Reimbursement Fee | $4.00 | $4.00 |
| Judicial Support-Criminal 12-1-2005 | $6.00 | $6.00 |
| Indigent Defense Fund | $2.00 | $2.00 |

| | | |
|---|---:|---:|
| E-File Fee | $5.00 | $5.00 |
| Crime Stoppers 10-200-412 | $50.00 | $50.00 |
| Compensation to Victims 10-200-276 | $50.00 | $50.00 |
| Court Appointed Attorney Fees 10-302-347 | $500.00 | $500.00 |
| Commitment | $5.00 | $5.00 |
| Issue Capias | $16.00 | $16.00 |
| Issue Subpoena | $8.00 | $8.00 |
| GRAND TOTAL | $903.00 | $3,989.00 |

If total court costs, reimbursement fees, and fines are not paid within 30 days of the Judgment, an additional Time Payment Fee of $25.00 will be assessed pursuant to the applicable statues and related case law. See Texas Code of Criminal Procedure, Article 102.030.

A judgment nunc pro tunc is an appealable judgment to the extent of the changes therein. *See Moore v. State*, 446 S.W.2d 878, 879 (Tex. Crim. App. 1969) ("The right of appeal before this Court is limited to the validity of the nunc pro tunc entry."); *Cunningham v. State*, 322 S.W.2d 538, 540 (1959) ("In cases such as this the right of appeal, if any, is limited to the validity of the nunc pro tunc entry. Appellant is not entitled to appeal from the conviction itself . . . ."). An issue we will have to revisit is that there is no certification of the right to appeal in the clerk's record for the appeal of the judgment nunc pro tunc. Carnley was, however, granted leave to amend the appellant's brief by this Court. An amended brief was filed on December 5, 2022. The amended brief is also an *Allison* brief, as was the original brief. While arguing no potentially reversible error, the brief does present a number of non-reversible errors, all but one of the argued errors relate to financial assessments.

**Change of Counsel-More Briefing**

The attorney representing Carnley in the appeal was appointed to a new district court bench in McLennan County. His motion to withdraw, due to his appointment and filed in the trial court, was granted, and new counsel was appointed. The supplemental clerk's record reflecting the withdrawal and appointment also contains a Bill of Costs dated January 4, 2023, which is the same as the November 29, 2022, Bill of Costs set out above.

Carnley's new appellate counsel filed a supplemental amended brief complaining about the original plea and whether it was knowing and voluntary. In the "Supplemental Amended Brief for Appellant," new counsel specifically "adopts the 'Improper financial assessments' arguments set forth on pgs. 33-41 of Appellant's amended brief (filed 12/5/2022)." The amended brief mentioned by new appellate counsel had been filed after the appeal had been abated and remanded to the trial court for review of the mandatory costs issues. Those are the arguments regarding the issues on costs the Court now purports to address in its opinion.

ANALYSIS OF THE PROBLEMS

**Address the Errors**

To adequately begin to address the problems with where we are, we unfortunately must now address a number of the wrong turns taken on our way to arriving at this point. The first, and the one that could have stopped the cascading errors and problems that

followed, was the Court's failure to merely address the alleged error in the trial court's

first judgment, the Judgment Adjudicating Guilt, signed on April 29, 2021. As described

above, that judgment, the one which this appeal initially attacked, assessed only $124.00

in unpaid court costs. We should have stopped right there.

**The Abatement Procedure**

You will recall that the Court abated the appeal and remanded this proceeding to

the trial court in October of 2022. I dissented and argued that there was no need to abate

the appeal. Specifically, I argued then, as I argue now, that:

> Appellant does not attack that amount [$124.00] as improper, erroneous, unsupported, or excessive. Appellant's actual attack, as briefed, is on the cost, including a fine and attorney's fees, included in the bill of cost. To the extent the bill of cost includes amounts for more than $124.00, such amounts cannot be collected pursuant to the trial court's judgment because they are not assessed against the appellant in the judgment. We do not have the authority in this proceeding to increase the amount of the cost assessed in the judgment. *See Gilmore v. State*, No. 12-15-00049-CR, 2015 Tex. App. LEXIS 6964, at *3 (Tex. App.—Tyler July 8, 2015, no pet.) (not designated for publication) ("the State does not provide, nor are we aware of, any authority that authorizes an appellate court to increase the amount of court costs assessed."); *Cuevas v. State*, No. 05-12-01648-CR, 214 Tex. App. LEXIS 4844, at *13 (Tex. App.—Dallas May 5, 2014, no pet.) (not designated for publication) (court could not modify judgment or order the trial court to impose additional costs because record did not indicate whether defendant had paid his court costs); *see also* TEX. CODE CRIM. PROC. art. 103.007 ("After a defendant has paid costs, no more costs may be charged against the defendant unless the court rules on a motion presented to the court that additional costs are due."). *But see Smith v. State*, 439 S.W.3d 451, 463 (Tex. App.—Houston [1st Dist.] 1014, no pet), *abrogated on other grounds by*, *Meadows v. State*, 455 S.W.3d 166, 171 n.2 (Tex. Crim. App. 2015). Appellant concedes that more than $124.00 could have properly been assessed as court cost. I agree. Accordingly, there is no need to abate this proceeding as there is nothing that prevents the Court from disposing of appellant's issues as

> briefed. There being no error shown to exist in the trial court's judgment, it should be affirmed, and counsel's motion to withdraw should be granted. There is simply no need to consume the time and resources to abate this appeal.

*Carnley v. State*, No. 10-21-00104-CR, *1, n. 1 (Tex. App.—Waco Oct. 19, 2022, order) (Gray, C.J., dissenting) (not designated for publication). Those arguments as to why counsel's motion to withdraw was not granted and the trial court's judgment was not affirmed based on our inability to render a judgment more favorable to the State than the one before us then on appeal have not yet been addressed.

  —*Authority*

The Court's effort to address the costs issues outside the judgment has also caused me to focus on the absence of this Court's authority to find and correct such errors. As I noted in my dissent in *Briceno v. State*, 675 S.W.3d 87, 2023 Tex. App. LEXIS 5963, *26-28 (Tex. App.—Waco Aug. 9, 2023, no pet.) (Gray, C.J. dissenting), there is a question about our authority to find error in, and order a correction of, a bill of costs as opposed to an error in the trial court's judgment. I noted that this Court's effort to order a correction of the Bill of Costs,

> … reveals both the validity and the importance of the question that Chief Justice Jim Wright (retired) raised when working with us in a post-*Cummins v. State*, 646 S.W.3d 605 (Tex. App.—Waco 2022, pet. ref'd), post-*Bryant v. State*, 642 S.W.3d 847, 850 (Tex. App.—Waco 2021, no pet.) case: Where is our authority to amend the bill of costs? I thought it was such an important question for many cases being decided involving attacks on court costs that all the members of the Court should have input in the resolution of the issue. Because one of our justices was recused in the case in which the question was raised, hence Chief Justice Wright's participation, I redacted

the specific case information and circulated the issue in a generic format for discussion and analysis. After some serious soul searching and research, I thought the members of the Court had come to the conclusion that Chief Justice Wright was correct; that we do not have the authority to render a judgment ordering the district clerk to modify the Bill of Costs. That resulted in a compromise in the way that some of our subsequent opinions, with corresponding judgments, have been written where we correct the trial court's judgment, but only suggest that the Bill of Costs be modified for the same changes/reasons. *See* the trilogy of cases of *Simmons v. State*, No. 10-18-00269-CR, 2023 Tex. App. LEXIS 450, *10 n.7 (Tex. App.—Waco Jan. 25, 2023, no pet.), *Lee v. State*, No. 10-18-00334-CR, 2022 Tex. App. LEXIS 9460, *4 n.4 (Tex. App.—Waco Dec. 28, 2022, no pet.), *Anderson v. State*, No. 10-18-00341-CR, 2022 Tex. App. LEXIS 9459, *8 n.4 (Tex. App.—Waco Dec. 28, 2022, pet. ref'd). A critical legal issue to note that is relevant to this analysis and solution is that the Court of Criminal Appeals has the authority/jurisdiction to mandamus a district clerk, a Court of Appeals does not. *See* TEX. GOV'T CODE §§ 22.201(k), 22.221(a), (b); *In re Simmonds*, 271 S.W.3d 874, 879 (Tex. App.—Waco 2008, orig. proceeding); *see also In re Daniel*, 396 S.W.3d 545 (Tex. Crim. App. 2013) (converting habeas corpus application to a mandamus petition and ordering district clerk to modify "Bill of Cost").

*Id*. *26-27. Moreover, the rules limit the type of judgments we are authorized to render and modifying a bill of costs is not one of them. *See* TEX. R. APP. P. 43.2. And critical to this part of the analysis is that we must find the statute which grants us the authority to take the action we do. *See Abbott v. State*, 271 S.W.3d 694 (Tex. Crim. App. 2008).

In an effort to address how we have the authority to review the work of the district clerk and order the clerk to correct the Bill of Costs without an allegation of error committed by the trial court, the Court in *Briceno* relied upon concepts the Court of Criminal Appeals had already rejected. When this Court previously tried to review an order for which we had no jurisdiction to review, the Court of Criminal Appeals said:

The court of appeals decided that it had jurisdiction to decide the merits of appellant's appeal from the trial court's post-judgment order denying his time-credit motion, because there was no "statute or rule precluding" the appeal. *See Abbott*, 245 S.W.3d at 20. This, however, is not the standard for determining jurisdiction. The standard for determining jurisdiction is not whether the appeal is precluded by law, but whether the appeal is authorized by law. *See* TEX. CONST. art. V, § 6(a), (providing that courts of appeals "shall have appellate jurisdiction co-extensive with the limits of their respective districts, which shall extend to all cases of which the District Courts or County Courts have original or appellate jurisdiction, under such restrictions and regulations as may be prescribed by law" and "[s]aid courts shall have such other jurisdiction, original and appellate, as may be prescribed by law"); Article 44.02, TEX. CODE CRIM. PROC., ("[a] defendant in any criminal action has the right of appeal under the rules hereinafter prescribed"); TEX. R. APP. PROC. 25.2(a)(2) (a defendant "has the right of appeal under Code of Criminal Procedure article 44.02 and these rules" in every case in which the trial court "enters a judgment of guilt or other appealable order"); *McIntosh v. State*, 110 S.W.3d 51, 52 (Tex. App.--Waco 2002, no pet.) (a defendant has right to appeal from a final judgment of conviction or when "expressly granted by law") (internal quotes omitted); *Abbott*, 245 S.W.3d at 23 (Gray, J., dissenting) (courts of appeals have no appellate jurisdiction in criminal matters "absent a specific authorization by law").

*Abbott v. State*, 271 S.W.3d 694, 696-97 (Tex. Crim. App. 2008). *See also Staley v. State*, 233 S.W.3d 337 (Tex. Crim. App. 2007) (reviewing a Fort Worth Court of Appeals' jurisdiction decision); *Apolinar v. State*, 820 S.W.2d 792 (Tex. Crim. App. 1991) (reviewing a San Antonio Court of Appeals' jurisdiction decision).

—*Rule 44.4*

But my complaint about the use of the abatement procedure did not stop with jurisdiction arguments. As I explained in *Welch v. State*, 668 S.W.3d 54, 57-59 (Tex. App.—Waco 2022, order) (Gray, C.J., dissenting), which was issued one week before and

incorporated into my dissent to the abatement order in this appeal, the fundamental basis for the use of the abatement procedure was missing. With the foundation missing, the procedure was built on shifting sand. And it has shifted.

The foundation for the procedure articulated by the Court is that we should not reverse an appeal for a trial court's error if the error could be corrected and the appeal could then proceed. The foundation for that argument is Texas Rule of Appellate Procedure 44.4. The Rule provides:

### 44.4. Remediable Error of the Trial Court

(a) *Generally.* A court of appeals must not affirm or reverse a judgment or dismiss an appeal if:
   (1) the trial court's erroneous action or failure or refusal to act prevents the proper presentation of a case to the court of appeals; and
   (2) the trial court can correct its action or failure to act.
(b) *Court of Appeals Direction if Error Remediable.* If the circumstances described in (a) exist, the court of appeals must direct the trial court to correct the error. The court of appeals will then proceed as if the erroneous action or failure to act had not occurred.

TEX. R. APP. P. 44.4.

To use the Rule properly, the conditions precedent must be present. Those conditions are summarized in the title and then described, or set out, in subsection (a) of the Rule. As the title is captioned, the act or failure/refusal to act by the trial court must be "remediable" and it must be "error."

Subsection (a) of the Rule sets out the circumstances that must exist for use of the Rule. It can be broken down into elements like a penal statute or a cause of action as

follows:

1. The trial court's erroneous
    a. action;
    b. failure to act; or
    c. refusal to act
2. Prevents the proper presentation of a case on appeal.

Unless both conditions precedent are met, the appellate court cannot comply with subsection (b) of the Rule, and thus, use of the Rule is improper.

The Rule has been properly utilized in a number of recurring fact patterns:

1. Failure or refusal to make findings of fact and conclusions of law, *see State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006)*;*
2. Failure to pronounce sentencing in the presence of the defendant, *Keys v. State*, 340 S.W.3d 526, 529 (Tex. App.—Texarkana 2011, no pet.) and *Meacham v. State*, 273 S.W.3d 803, 806 (Tex. App.—Houston [14th Dist.] 2008, no pet.);
3. Variation in oral and written ruling on motion to quash, *Henery v. State*, 364 S.W.3d 915 (Tex. Crim. App. 2012);
4. Refusal to permit the making of an offer of proof or bill of exception, *Spence v. State*, 758 S.W.2d 597, 599-600 (Tex. Crim. App. 1988); and
5. Failure to conduct a proper Batson hearing, *Hutchinson v. State*, 86 S.W.3d 636, 638 n.1 (Tex. Crim. App. 2002).

To understand the proper use of the Rule and how it is designed to work, let us examine an all too common fact pattern to which it applies and is thus properly and efficiently utilized – the trial court's failure or refusal to make findings of fact. In both civil and criminal cases, under appropriate circumstances, a party is entitled to have the trial court set out in writing findings of fact. *See* TEX. R. CIV. P. 296 (civil), *Sandoval v. State*, 665 S.W.3d 496, 520 (Tex. Crim. App. 2022) (voluntariness of confession); *State v. Cullen*, 195 S.W.3d 696, 698-99 (Tex. Crim. App. 2006) (on request of losing party on motion to

suppress).  A request must be properly made. [1]  TEX. R. CIV. P. 296, 297; *Cherne Indus., Inc. v. Magallanes*, 763 S.W.2d 768, 772 (Tex. 1989).  *See State v. Cullen*, 195 S.W.3d 696, 699 (Tex. Crim. App. 2006).  Like most rights, it can be waived by the failure to properly assert it. *See Las Vegas Pecan & Cattle Co. v. Zavala County*, 682 S.W.2d 254, 255 (Tex. 1984) (untimely notice of past due findings and conclusions waive right to complain of trial court's failure to file findings and conclusions).  So generally, to properly assert the right, the request must be in regard to a district or county court case conducted without a jury or an order or determination for which findings of fact are appropriate, such as in certain criminal matters, and the request must be timely made.  If the request is properly made, the trial court errs in not making the findings.  *See State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006); *Cherne Indus., Inc. v. Magallanes*, 763 S.W.2d 768, 772 (Tex. 1989).  Thus, the first condition precedent to application of the Rule is present, the failure or refusal to make findings when the party is entitled to them, and they have been properly requested or necessarily required.

But not all errors lead to the same remedy.  This is because not all errors cause the same problem or result.  Frequently, not having the trial court's findings does not prevent the party from a proper presentation of the case on appeal.  *See Graham Cent. Station, Inc. v. Peña*, 442 S.W.3d 261, 263 (Tex. 2014)).  When the trial court fails or refuses to make

---

[1] In some situations, such as a question regarding the voluntariness of a confession, written findings are required even if not requested.  *See Sandoval v. State*, 665 S.W.3d 496, 520 (Tex. Crim. App. 2022).

findings, the appellant may nevertheless be able to present the case on appeal because a full record of the proceeding was made and the nature of the error being argued does not rely upon a specific finding of the trial court. The important observation to make is that the error, the failure or refusal to make findings, may not prevent the proper presentation on appeal.

The procedure is profoundly different when the trial court errs by failing to hold an evidentiary hearing on a motion for new trial. *See Reyes v. State,* 849 S.W.2d 812, 816 (Tex. Crim. App. 1993). Once it is determined that the trial court erred by failing to hold an evidentiary hearing on a motion for new trial, the appeal is not abated for the hearing and subsequently reinstated. Rather, the issue is sustained and the case is remanded to the trial court. The appeal is over because the trial court may alter the judgment or grant a new trial and the appellate timetable and process begins anew.[2] *See McIntire v. State*, 698 S.W.2d 652, 662 (Tex. Crim. App. 1985). *See also Reyes v. State*, 849 S.W.2d 812, 816 (Tex. Crim. App. 1993); *Price v. State*, 826 S.W.2d 947, 948 (Tex. Crim. App. 1992); *Barnett v. State*, 76 S.W.3d 739, 742 (Tex. App.—Waco 2002, pet. ref'd); *Mendoza v. State*, 935 S.W.2d 501, 504 (Tex. App.—Waco 1996, no pet.).

Thus, when a trial court fails to hold an evidentiary hearing on a motion for new trial, the Rule cannot be properly used to simply allow the trial court to conduct the

---

[2] This is the same procedure for an error in ordered restitution: the appeal is remanded to the trial court for a restitution hearing and the appellate process starts anew after the hearing. *See Miller v. State*, 343 S.W.3d 499, 504 (Tex. App.—Waco 2011, pet. ref'd).

necessary hearing because the entire course of the proceeding could change as a result of that hearing.  Indeed, I question whether this Rule, Rule 44.4, can be properly used in any situation where the result could be a modification by the trial court of the trial court's prior judgment which is the subject of the then pending appeal.

This brings us back to this appeal.  Were the conditions precedent met?  Absolutely not.  Carnley had no trouble briefing the alleged errors in the trial court's judgment. Carnley did not assert or argue there was any issue for which a proper presentation on appeal could not be made.  That fact alone makes the Court's use of the Rule and abatement procedure improper.

Moreover, the Rule requires the Court to identify "the trial court's erroneous action or failure or refusal to act."  The Court was unable to identify any trial court error, failure, or refusal.  Rather, the Court ordered that the "trial court shall conduct a hearing on appellant's court-cost challenges…."  *Carnley v. State*, No. 10-21-00104-CR, *5 (Tex. App.—Waco Oct. 19, 2022, order) (not designated for publication).

*Carnley* and *Welch* have not been the only cases in which the abatement of the appeal and remand to the trial court to review court costs has been used.  But it has not been consistently used in every appeal in which court costs is raised as an issue.

The Court has subsequently attempted to justify its inconsistent use of the procedure.  In *Briceno,* the Court explained, "Thus, the Court can, but is not obligated to, abate and remand the appeal to the trial court for reconsideration of court costs that are

so confusing as to prevent the proper presentation of the issue in this Court." *Briceno v. State*, 675 S.W.3d 87, 2023 Tex. App. LEXIS 5963, at *18 (Tex. App.—Waco Aug. 9, 2023, no pet).

First, I note that being "so confusing" appears nowhere in Rule 44.4 as a condition precedent to remand an issue to the trial court. And while I have recognized the issue of court costs is already pretty "gnarly," that alone does not meet the requirement of the Rule. Second, just because an issue is confusing does not make it a proper basis to send it back to the trial court for "reconsideration." Under some very unique and specific circumstances, we have been authorized to allow a trial court to clarify a jurisdictional issue, specifically where the issue is dependent upon a determination of the trial court's intent, but not to merely "reconsider" an issue that was being challenged on appeal. *See Am. Home Prods. Corp. v. Clark*, 3 S.W.3d 57 (Tex. App.—Waco 1999), *aff'd*, 38 S.W.3d 92 (Tex. 2000) (appeal abated to allow trial court to clarify order concerning venue/joinder claims; order affirmed by Texas Supreme Court). *See also Walston v. Lockhart*, 36 S.W.3d 278 (Tex. App.—Waco 2001, order) (inclusion of Mother Hubbard clause was remediable error; appeal abated to correct error).

If we could abate every appeal because the issues briefed are confusing, we may never dispose of another appeal. Most cases are appealed for the very reason that the issues are confusing. The facts can be poorly tried, poorly argued, and poorly summarized. The law can be complex, conflicting, and less than clear. Together, when

presented in a brief, the law and the facts can be very confusing and could, in virtually every case, be characterized as preventing a proper presentation of the case to the court of appeals. That has never been a justification for sending an appeal or an issue back to the trial court to review its decision. Ultimately, if the appellant is unable to convince the appellate court that an error made by the trial court adversely affected the judgment, the appellant loses – confused or not.

And finally, the abatement/remand procedure in these court costs cases is not being used so that the trial court can "make findings that comply with a particular statutory requirement" as suggested by the Court in *Briceno*. *Briceno v. State*, 675 S.W.3d 87, 2023 Tex. App. LEXIS 5963, at *18 (Tex. App.—Waco Aug. 9, 2023, no pet). Rather, the abatement order in this case states, "We abate this appeal to the trial court to review, and if necessary, correct only the assessed mandatory court costs." *Carnley v. State*, No. 10-21-00104-CR, *4 (Tex. App.—Waco Oct. 19, 2022, order) (not designated for publication). Thus, not only is the "trial court's erroneous action or failure or refusal to act" not identified, the scope of the remand is for a general "review," and the ability to correct is limited to "assessed mandatory court costs." To this limitation, we will later return.

Rule 44.4 does not authorize this Court to give jurisdiction to the trial court for a general review of "the assessed mandatory court costs." The Rule requires trial court error. *See* TEX. R. APP. P. 44.4(a)(1). As I stated in my dissent to the abatement order in

*Welch v. State*, which I incorporated in my Dissent to Abatement Order in this case:

> The Court apparently has not determined that there is an error in the judgment. Abatement Order at 4 (" …we abate this appeal to the trial court to review and, *if necessary*, correct only the assessed mandatory court cost.") (emphasis added). The Court certainly gives no indication of the error, if any, that is present in the judgment to be addressed by the trial court at the abatement hearing. And because the error is not identified, the Court is thus unable to comply with the requirement in the rule which instructs the Court to " …direct the trial court to correct *the error*." TEX. R. APP. P. 44.4(b) (emphasis added). This leads me to conclude that any allegation of error in the assessment of mandatory court cost will be subjected to this unprecedented procedure, or at the very least, only the Court will be able to determine those issues "where court cost errors can be accurately determined from the existing record." Abatement Order at 4, fn 2.

*Welch v. State*, 668 S.W.3d 54, 57 (Tex. App.—Waco 2022, order) (Gray, C.J., dissenting)

In *Welch*, a proceeding on the same procedural trajectory as *Carnley*, the appellant tried to stop the abatement and remand to the trial court by filing a petition for a writ of mandamus. *See In re Welch*, WR-94,262-01 (Tex. Crim. App. Nov. 2, 2022) (denied without written order).[3] Welch's efforts to obtain mandamus relief failed. *Id*. We do not know why. A possible reason is that the errors might fix themselves with further development in this Court and, thus, become moot. But the more likely justification for the summary denial by the Court of Criminal Appeals is that the errors could be corrected on petition for discretionary review. Thus, without the course correction that a writ of mandamus might have provided, both *Welch* and *Carnley* soldiered on. So must we because those

---

[3] *Welch* arose out of the same county as *Carnley*, and both appellants were initially represented by the same appellate counsel.

issues now impact this Court's opinion and judgment.

**ORDER AND NEW JUDGMENT**

As described in the procedural background above, it does not appear from the appellate record that there was any type of in-person hearing on the abatement and remand to the trial court. But both an order and a new judgment were rendered. Let us begin this section with the simplest of issues regarding the order and new judgment: can we address any issue in this appeal as it relates to that judgment?

**Certification of Right to Appeal Nunc Pro Tunc Judgment**

The record in this appeal does not "include the trial court's certification of the defendant's right of appeal" of the judgment nunc pro tunc. TEX. R. APP. P. 25.2(d). As the Rules of Appellate Procedure dictate, "The trial court shall enter a certification of the defendant's right of appeal each time it enters a judgment of guilt or other appealable order . . . ." *Id.* (a)(2). Without the required certification, we have no authority to address any issue that is raised based upon the content of that document. *See id.* 25.2(d). Thus, "[t]he appeal must be dismissed if a certification that shows the defendant has the right of appeal has not been made part of the record under these rules." *Id.*; *Dears v. State*, 154 S.W.3d 610, 613 (Tex. Crim. App. 2005).

**Jurisdiction to Review Nunc Pro Tunc Judgment**

Even if we were to obtain a certification of the right to appeal regarding that judgment, our ability to address the issues would not fare any better. I would begin an

analysis by a determination of what, exactly, the new judgment is.

This Court has recently summarized the nunc pro tunc procedure in addressing a post-judgment motion for such a judgment. *In re Cornett*, Nos. 10-22-00191-CR through 10-22-00203-CR, 2022 Tex. App. LEXIS 4470, at *2 (Tex. App.—Waco June 29, 2022, orig. proceeding):

> The purpose of a nunc pro tunc judgment is to provide a method for trial courts to correct the record when there is a discrepancy between the judgment as pronounced in court and the judgment reflected in the record. *Blanton v. State*, 369 S.W.2d 3d 894, 897-98 (Tex. Crim App. 2012). The corrections must reflect the judgment that was actually rendered but that for some reason was not accurately entered into the record at the time of the judgment. *Id.* at 898. Further, nunc pro tunc judgments are limited to clerical mistakes or errors in a judgment; not for errors involving judicial reasoning. *Id.; see State v. Bates*, 889 S.W.2d 306, 309 (Tex. Crim App. 1994) (applying former Texas Rule of Appellate Procedure 36); *Jackson v. State*, 362 S.W.3d 817, 819-20 (Tex. App.—Amarillo 2012, no pet.). There is nothing in this record to suggest respondent would be correcting a clerical mistake if respondent granted relator's motion. *See Wilson v. State*, 677 S.W.2d 518, 521 (Tex. Crim. App. 1984) (there must be proof that the proposed judgment was actually rendered or pronounced at an earlier time).

*Id*. *2-3. If the new judgment is really a judgment nunc pro tunc, only the changes made to this judgment from the prior judgment may be appealed. *See Blanton v. State*, 369 S.W.3d 894, 900, 904 (Tex. Crim. App. 2012); *Moore v. State*, 446 S.W.2d 878, 879 (Tex. Crim. App. 1969).

But maybe this document is labeled incorrectly; maybe it is not a judgment nunc pro tunc at all. A judgment nunc pro tunc is properly used when the initial judgment does not conform to the actual judgment that was rendered by the trial court. *See Blanton*

*v. State*, 369 S.W.3d 894, 897-98 (Tex. Crim. App. 2012).  When properly appealed, we can review a judgment nunc pro tunc when there is some scrivener's error in drafting the written judgment, in other words, when a clerical error is made.  *Id*.  As I warned in my dissent to the abatement order, this is not a case in which "the record will support a determination that the trial court rendered judgment regarding cost other than what appears in the judgment as a result of a clerical error."  *Welch v. State*, 668 S.W.3d 54, 58 n.3 (Tex. App.—Waco 2022, no pet.) (Gray, C.J., dissenting) (incorporated by reference in *Carnley v. State*, No. 10-21-00104-CR, *1 (Tex. App.—Waco Oct. 19, 2022, order) (Gray, C.J., dissenting) (not designated for publication)).

The fact that the increased award of costs and fees was not a clerical error is borne out by three documents.  The first is the abatement order.  The Court did not abate the appeal and remand the proceeding to the trial court to correct an identified clerical error in the judgment.  Rather, the trial court was ordered to "review and, if necessary, correct only the assessed mandatory court costs."  *Carnley v. State*, No. 10-21-00104-CR, *4 (Tex. App.—Waco Oct. 19, 2022, order) (not designated for publication).

The second document that confirms the increased award of costs and fees was not a clerical error is the Motion to Enter Nunc Pro Tunc filed by the State.  The motion first recites that: "The form **JUDGEMENT ADJUDICATING GUILT** reflects that the Court Costs are $124.00 and the Reimbursement Fees as $0.00."  The motion then prays "that the JUDGMENT in this cause be reformed to show the correct costs and reimbursement

fees." The motion does not reflect or suggest that originally, there was any intention or action by the trial court to render a judgment for any amount other than $124.00. Rather, the motion suggests that the amount for which the judgment was rendered was now believed to be incorrect and should be changed "to show the correct" amount. In every sense of meaning, this was nothing more than a motion to correct a perceived trial court error in determining the amount of court costs assessed—a motion to review the amount, determine the correct amount, and correct the amount in the judgment. This motion was not requesting correction of a clerical/scrivener's mistake in transcribing the trial court's first judgment.

The third document which shows that this attempted nunc pro tunc judgment does not correct clerical errors is entitled, "Order Entering Nunc Pro Tunc on Judgment." This Order reads in its entirety as follows:

### ORDER ENTERING NUNC PRO TUNC ON JUDGMENT

This day came on to be heard the State's Motion to enter Judgment Nunc Pro Tunc in the above styled and numbered cause and the Court having heard the Motion and being satisfied that the statements therein are true, is of the opinion that said motion should be granted. It is therefore CONSIDERED, ORDERED and ADJUDGED by the Court that the following judgment should be reformed to reflect:

**The form JUDGEMENT ADJUDICATING GUILT should reflect that the Court Costs are $848.00 and the Reimbursement Fees as $55.00.**

and a copy of this ORDER be attached to the original Judgment and become a part thereof. (Emphasis in original)

The Order does not reflect that it is changing amounts in the original judgment because

they were entered incorrectly as a result of a clerical error. Rather, the judgment is being "reformed" to "reflect" different amounts based on the "statements" in the motion.

Based on the foregoing, it is clear that the changes being made to the judgment were not necessitated by a clerical error, and it is therefore improper to use a nunc pro tunc judgment or procedure to modify the judgment.

But even if the nunc pro tunc judgment was properly rendered with new/different amounts of court costs, and even if the trial court prepares a certification of the right to appeal, there remains the fundamental problem that we have no jurisdiction to review the changes made via the execution of the nunc pro tunc judgment. No timely notice of appeal was filed to invoke our jurisdiction to review the changes made in the nunc pro tunc judgment. As a separately appealable order, a timely notice of appeal is required to invoke our jurisdiction. *See Williams v. State*, 603 S.W.3d 439, 446-48 (Tex. Crim. App. 2020); *Smith v. State,* 559 S.W.3d 527, 535 (Tex. Crim. 2018) ("other examples of appealable orders that require a notice of appeal include: an order entering a *nunc pro tunc* judgment....").

**Changes to Judgment Exceed Scope of Abatement Order**

This is probably the appropriate time to discuss that the changes to the judgment exceed the permitted scope of the abatement order. Recall that the Court's order abated "this appeal to the trial court to review, and if necessary, correct only the assessed mandatory court costs." *Carnley v. State*, No. 10-21-00104-CR, *4 (Tex. App.—Waco Oct.

19, 2022, order) (not designated for publication). The trial court's ability to modify the judgment is limited to the authorization granted by the appellate court in the abatement order. *See Lewis v. State*, 711 S.W.2d 41, 43-44 (Tex. Crim. App. 1986); *Nava v. State*, 480 S.W.3d 759, 763 (Tex. App.—Houston [1st Dist.] 2015), pet. ref'd). Assuming the validity of the abatement order, the trial court was authorized "to review, and if necessary, correct ONLY the assessed mandatory court cost." *Carnley v. State*, No. 10-21-00104-CR, *4 (Tex. App.—Waco Oct. 19, 2022, order) (not designated for publication). (Emphasis added).

**WHICH JUDGMENT FOR WHICH COST FROM WHICH STATUTE[4]**

We now turn to a rather difficult issue, made even more complicated by a recent opinion from this Court: what mandatory court costs could be properly assessed? That simple question leads to another: what costs statute/statutes is/are applicable? And one should assume those questions are easily answered; but they are not.

To understand where this is headed, it is necessary to first be aware of and understand the Court's holding in *Bradshaw*. *Bradshaw v. State*, 675 S.W.3d 78, 2023 Tex. App. LEXIS 5749 (Tex. App.—Waco Aug. 2, 2023, pet. filed). In *Bradshaw*, the Court held that the costs statute in effect on the "date the defendant is convicted of the offense" is the applicable statute to determine the assessment of costs. *Id*. at *12-13 (citing TEX. GOV'T CODE § 51.608 (effective June 14, 2013)).

---

[4] Of course, we do not need to go down this path if I am correct that we erred when we did not affirm the judgment, as opposed to the Bill of Costs, that assessed $124.00 in costs—which no one attacked.

The dispute in *Bradshaw* was a bit complex because the offense Bradshaw had been convicted of occurred on or about July 8, 2019. In that year, the legislature revised some of the statutes that authorized costs to be assessed in criminal cases. The effective date of the statute was January 1, 2020, and the implementation provision provided: "An offense committed before the effective date of this Act is governed by the law in effect on the date the offense was committed, and the former law is continued in effect for that purpose." § 5.01, 2019 TEX. GEN LAWS 3982, 4035-36. The *Bradshaw* Court held that, notwithstanding the implementation language set out above, section 51.608 of the Texas Government Code dictated the applicable costs statute as the one in effect on the date Bradshaw was convicted—that is, the date the trial court signed the judgment of conviction—October 20, 2022, not the date Bradshaw committed the offense, July 8, 2019.

In this proceeding, the following dates may be significant:

| | |
|---|---|
| Date of offense | December 30, 2018 |
| Bill of Costs | August 28, 2019 |
| Order of Deferred Adjudication | August 29, 2019 |
| Order Imposing Condition of Community Supervision | August 29, 2019 |
| Judgment Adjudicating Guilt | April 21, 2021 |
| Bill of Costs | November 29, 2022 |
| Judgment Nunc Pro Tunc Adjudicating Guilt | December 1, 2022 |
| Bill of Costs | January 4, 2023 |

In my dissent to *Bradshaw*, I commented that "court costs is already a gnarly issue," and the Court's holding added to it. *Bradshaw v. State*, 675 S.W.3d 78, 2023 Tex. App. LEXIS 5749, at *17 (Tex. App.—Waco Aug. 2, 2023, pet. filed). For purposes of assessing costs pursuant to *Bradshaw*, the initial question is: what is the proper date to use as the date of

conviction? In some situations, the date a defendant pleads guilty but is placed on deferred adjudication community supervision is considered a conviction. *See e.g. Ex parte Powell*, 570 S.W.3d 417, 419 (Tex. App.—Waco 2019, no pet.) (deferred adjudication in a sexual assault case is considered final conviction if defendant commits another sexual assault). On August 29, 2019, Carnley entered into a plea agreement, pled guilty, and was placed on deferred adjudication community supervision. The August 28, 2019, Bill of Costs appears to have been the basis for the amount of costs included in the Order Imposing Conditions of Community Supervision and the Order of Deferred Adjudication. So, the costs were "assessed" at that time. Moreover, the "costs" assessed, plus attorney's fees, at that time were also the costs used for the computation of monthly payments for the community supervision fees. Finally, at least some payments toward those costs had been made prior to the time Carnley's community supervision was revoked and his guilt adjudicated.

But, according to the Court's holding in *Bradshaw*, because the date the deferred adjudication order was signed might not be considered the date of Carnley's conviction, we may have to use another date, and, thus, determine statutory costs based on that other date. The next possible date we would look to would be April 29, 2021, the date of the Judgment Adjudicating Guilt. Under *Bradshaw*, that date might be the date of conviction; and it is certainly the date of the judgment which provided the basis for this appeal. That judgment assesses $124.00 of "Unpaid Court Costs." But the Bill of Costs dated May 19,

2021 totals $3,989.00 of fines, attorney fees, and court costs including Local Consolidated Court Costs of $105.00 and State Consolidated Court Cost of $185.00.  Under *Bradshaw*, the amounts listed would be the proper amounts for those specific types of costs if May 19, 2021 is considered the date of Carnley's conviction and the Court's interpretation of the statute in *Bradshaw* is determined to be correct (a petition for discretionary review is pending).

However, after the October 17, 2022 abatement order, the trial court signed the Order Entering Nunc Pro Tunc on Judgment on November 29, 2022, and, although dated April 29, 2021, yet file stamped on December 1, 2022, the Judgment Nunc Pro Tunc Adjudicating Guilt included costs in the amount of $848.00.  In the new judgment, for which I again note, we do not have a certification of the right to appeal or a notice of appeal but which is the judgment being addressed in the opinion, court costs and reimbursement fees totaling $903.00 are assessed.  This assessment is consistent with the certified Bill of Costs dated November 29, 2022.  However, the November 29, 2022 certified Bill of Costs contains amounts for the Local Consolidated Court Costs and State Consolidated Court Costs which are less than those costs assessed on May 19, 2021.  The November 29, 2022 certified Bill of Costs reflects Local Consolidated Court Costs of $74.00 and State Consolidated Court Costs of $133.00, which are the amounts for offenses occurring before January 1, 2021.  Thus, the amounts being affirmed in the Court's

opinion, appear to be inconsistent with the Court's recent holding in *Bradshaw*.[5]  Like I said, its gnarly.

There are also other costs now included in the judgment nunc pro tunc (and if relevant, the Bill of Costs) that were not included in the original judgment.  The one that troubles me the most, because the nature of the expense has been the subject of so many appeals, is attorney's fees.  The December 1, 2022 judgment nunc pro tunc and the November 29, 2022 Bill of Costs include $500.00 in court appointed attorney's fees (apparently from the original plea proceeding).  The problem with now including attorney's fees as part of court costs is—again—the scope of the Court's remand in the abatement order:  "We abate this appeal to the trial court to review, and if necessary, correct only the assessed mandatory court costs."  *Carnley v. State*, No. 10-21-00104-CR, *4 (Tex. App.—Waco Oct. 19, 2022, order) (not designated for publication).  Attorney's fees are not mandatory court costs and as such, it was beyond the trial court's jurisdiction on remand, as limited by the abatement order, to add attorney's fees to court costs even if it otherwise would have been proper.[6]

---

[5] Of course, part of the problem when we raise an issue and decide it without it having been an issue raised and briefed by the parties, as the Court did in *Bradshaw*, is that our holding on the issue is dicta.  *Sanders v. State*, 158 S.W. 291, 295 (Tex. Crim. App. 1913).  Even if we stumble along and get it right, it would be wrong because we should not be addressing it in the first place.  And as jurists, we are deprived of the research, insight, arguments, and factual development that could be provided by the parties or Amicus Curie on the subject.

[6] There may be other problems with now trying to include attorney's fees from the original community supervision order.  *See Wiley v. State*, 410 S.W.3d 313 (Tex. Crim. App. 2013); *Mayer v. State*, 309 S.W.3d 552 (Tex. Crim. App. 2010).

It also appears the trial court included other costs in its December 1, 2022 nunc pro tunc judgment which are not part of "mandatory court costs." In addition to the $24.00 of costs rejected by this Court, it would appear that at least the $55.00 of "Reimbursement Fees" and possibly other "assessed charges" included in the judgment are beyond the scope of the abatement order as well.

**WORTH MENTIONING**

There is much more that I could write to show how this Court's abatement procedure has created the antithesis of what Judge Cochran advocated in her concurring opinion in *Johnson*. *See Johnson v. State*, 423 S.W.3d 385, 396 (Tex. Crim. App. 2014) (Cochran, J., concurring) (cost issue best addressed on direct appeal). But, I will part with a reference to a statute with which I have yet to see compliance by a trial court. (This does not mean no trial court in Texas has ever complied with this statute—I simply have not seen any). The legislature is not deaf to the many problems that have been created by the assessment of court costs and the substantial resources expended in collection efforts for court costs. Apparently, recognizing the problem, the legislature passed Texas Code of Criminal Procedure article 42.15 (a-1). The current version provides:

> (a-1) Notwithstanding any other provision of this article, during or immediately after imposing a sentence in a case in which the defendant entered a plea in open court as provided by Article 27.13, 27.14(a), or 27.16(a), a court shall inquire on the record whether the defendant has sufficient resources or income to immediately pay all or part of the fine and costs. If the court determines that the defendant does not have sufficient resources or income to immediately pay all or part of the fine and costs, the court shall determine whether the fine and costs should be:

(1) subject to Subsection (c), required to be paid at some later date or in a specified portion at designated intervals;

(2) discharged by performing community service under, as applicable, Article 43.09(f), Article 45.049, Article 45.0492, as added by Chapter 227 (H.B. 350), Acts of the 82nd Legislature, Regular Session, 2011, or Article 45.0492, as added by Chapter 777 (H.B. 1964), Acts of the 82nd Legislature, Regular Session, 2011;

(3) waived in full or in part under Article 43.091 or 45.0491; or

(4) satisfied through any combination of methods under Subdivisions (1)—(3).

TEX. CODE CRIM. PROC. art. 42.15 (a-1) (effective until January 1, 2025).

As of the writing of this dissent, however, I have not seen a single case in which the trial court has complied with this statutory requirement. Compliance with it could eliminate the needless expenditure of resources to appeal court costs assessed that in all probability will never be collected. Moreover, this may be the type of trial court error for which an abatement procedure could be appropriate, especially in light of another statute permitting the trial court's reconsideration of fines and court costs upon notice the defendant has difficulty paying the fines and costs assessed.[7] TEX. CODE CRIM. PROC. art. 43.035. But I will await the time with patience until that issue is properly raised and

---

[7] It appears to me that it would be consistent with existing case law and statutes to limit counsel's and the intermediate appellate court's duty to a review of the actual dollar amount of costs included in the judgment, if any. Errors in the bill of costs have a full set of procedural tools for correction, inability to pay, and collection methods using procedures that would not impede the efficient processing of criminal appeals whether on the merits or in *Anders* cases. *See e.g.* TEX. CODE CRIM. PROC. art. 42.15 (a-1) (effective until January 1, 2025) (post-sentencing hearing regarding ability to pay costs); TEX. CODE CRIM. PROC. art. 43.035 (relief when payment of costs is difficult); TEX. CODE CRIM. PROC. art. 103.008 (correction of costs); *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) (frivolous appeals); *Dulin v. State*, 620 S.W.3d 129 (Tex. Crim. App. 2021) (costs not due until judgment is final); *Harrell v. State*, 286 S.W.3d 315 (Tex. 2009) (regarding challenging costs withdrawn from inmate accounts); *Cummins v. State*, 646 S.W.3d 605 (Tex. App.—Waco 2022, pet. ref'd) (procedure for filing *Anders* briefs and merits briefs).

briefed by the parties in an appeal as opposed to raising and deciding it *sua sponte*. *See Bradshaw v. State*, 675 S.W.3d 78, 2023 Tex. App. LEXIS 5749, at \*15 (Tex. App.—Waco Aug. 2, 2023, pet. filed) (Court addressing a cost issue not raised or briefed by the parties).

**CONCLUSION**

In summary and in conclusion, I dissent for the following reasons:

1. There was no need to abate the appeal and remand the proceeding to the trial court to review court costs.

2. The abatement procedure does not comply with the requirements of TEX. R. APP. P. 44.4, and we had no authority to abate the appeal and remand the proceeding to the trial court for a general review of an unspecified error regarding court costs.

3. We have no authority to review the costs as assessed in the post-abatement nunc pro tunc order and judgment because

   a. the costs assessed by the trial court exceeded the scope of the remand order;
   b. we have no certification of the right to appeal the nunc pro tunc judgment;
   c. we do not have a timely notice of appeal of the nunc pro tunc judgment.

4. We have no authority to affirm an increase in the amount of court costs originally assessed.

5. We have no authority to order a modification of a certified bill of costs, particularly when there is no error in trial court's judgment. (Moreover, any error in the Bill of Costs is harmless to the extent that the error does not impact the amount assessed in the judgment.)

For the foregoing reasons, I would affirm the trial court's judgment that is the proper

subject of this appeal, which is the April 29, 2021 Judgment Adjudicating Guilt. [8]



TOM GRAY
Chief Justice

Dissent delivered and filed November 30, 2023



---

[8] I have concluded that the Court erred in issuing the abatement order. I have also concluded the trial court lacked the authority to issue a judgment nunc pro tunc in reliance on that abatement order. Accordingly, I have concluded that the judgment properly before us for review is the April 29, 2021, Judgment Adjudicating Guilt which assesses $124.00 in court costs. I note, however, that if I am incorrect in my conclusions about whether the trial court could properly issue a judgment nunc pro tunc which modifies the assessment of court costs, we must dismiss Carnley's complaints in this appeal regarding court costs because those assessments have become moot due to the issuance of the nunc pro tunc judgment. Additionally, this appeal is not about the nunc pro tunc judgment. Finally, to the extent that this appeal is about the nunc pro tunc judgment, it must be dismissed because we have no certification of the right to appeal, or a notice of appeal, regarding that judgment. *See Williams v. State*, 603 S.W.3d 439, 446-48 (Tex. Crim. App. 2020).